**The Kagen Law Firm**
400 Park Avenue, Suite 1420
New York, New York 10022
Telephone: (212) 880-2045
Facsimile: (646) 304-7879
Russell Bogart, *Of Counsel*
Email: rbogart@kagenlaw.com
*Attorneys for Larry Warshaw and Carol Warshaw as Trustees for Carol Ann Enterprises, Inc. Pension Plan, and Sajust, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x

| | |
|---|---|
| In re: | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Index No. 08-01789 (BRL) |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04283 (BRL) |
| Plaintiff, | |
| - against - | |
| STEVEN B. MENDELOW, NTC & Co. LLP, as former custodian of an Individual Retirement Account for the benefit of STEVEN B. MENDELOW, NANCY MENDELOW, NTC & Co. LLP as former custodian of an Individual Retirement Account for the benefit of NANCY MENDELOW, CARA MENDELOW, PAMELA CHRISTIAN, C&P ASSOCIATES, LTD., and C&P ASSOCIATES, INC., | |
| Defendants. | |

-----------------------------------------------------------------------x

**THE WARSHAW PLAINTIFFS' OBJECTION TO STEVEN MENDELOW'S MOTION FOR THE ENFORCEMENT OF THE AUTOMATIC STAY AND FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL ARGUMENT ........................................................................................................ 2

    I.    MENDELOW LACKS STANDING UNDER §§ 362 AND 105 OF THE BANKRUPTCY CODE TO ENJOIN THE WARSHAW ACTION. ................................ 2

    II.    THE TRUSTEE HAS ACTED APPROPRIATELY IN DECLINING TO SEEK TO STAY THE WARSHAW ACTION. ........................................................................... 4

    III.    THIS COURT SHOULD NOT STAY THE WARSHAW ACTION OUT OF CONCERN FOR MENDELOW'S FIFTH AMENDMENT RIGHTS. ................................................ 7

CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Access Capital, Inc. v. Decicco*, 302 A.D.2d 48 (1st Dep't 2002) .................................................. 9

*Calpine Corp. et. al. v. Nevada Power Co., (In re Calpine Corp.)*,
354 B.R. 45 (Bankr. S.D.N.Y. 2006) ........................................................................................ 3

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ..................................................... 8

*Highland Capital Mgmt. LP v. Chesapeake Energy Corp.*
*(In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575 (5th Cir. 2008) ................................................ 6

*Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085 (2d Cir. 1995) ..................................................... 7

*In re Fiber Optek Interconnect Corp.*, 2009 Bankr. LEXIS 3040
(Bankr. S.D.N.Y. September 23, 2009) .................................................................................... 2

*In re Jackson*, 593 F.3d 171 (2d Cir. 2010) ...................................................................................... 2

*In re Johns-Manville Corp.*, 26 Bankr. 405 (S.D.N.Y. 1983) ........................................................... 5

*In re Phar-Mor Sec. Litig.*, 164 B.R. 903 (W.D. Pa. 1994) .................................................... 6, 7, 8

*In re Silverman*, 42 B.R. 509 (Bankr. S.D.N.Y. 1984) .................................................................... 2

*In re Smart World Techs., LLC v. Juno Online Servs., Inc.*,
*(In re Smart World Techs., LLC)*, 423 F.3d 166 (2d Cir. 2005) .................................................. 3

*OMC, Inc. v. Local Union 28 of the Sheet Metal Workers' Int'l Union* (In re OMC, Inc.),
2010 Bankr. LEXIS 3600 (Bankr. S.D.N.Y. October 13, 2010) .................................................. 3

*Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010) .............................................................. passim

*Picard v. Stahl*, 2011 WL 439532 (Bankr. S.D.N.Y. Feb. 9, 2011) ................................................. 5

*Queenie, Ltd. V. NyGard Int'l*, 321 F.3d 282 (2d. Cir. 2003) ......................................................... 3

*Ret. Sys. v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004) .............................................. 8

*Scipar, Inc. v. Simses*, 2008 U.S. Dist. LEXIS 63796 (W.D.N.Y. 2008) ................................. 8, 10

*Scott v. Nat'l Century Fin. Enters. (In re Baltimore Emergency Servs. II)*,
432 F.3d 557 (4th Cir. 2005) ..................................................................................................... 3

*Sterling National Bank v. A-1 Hotels Int'l, Inc.*,
175 F. Supp.2d 573 (S.D.N.Y. 2001) .............................................................................. 8, 10, 11

*Trefny v. Bear Sterns Sec. Corp.*, 243 B.R. 300 (S.D. Tex. 1999) .................................................. 7

*U.S. Commodities Futures Trading Commission v. A.S. Templeton Group, Inc.*,
297 F.Supp.2d 531 (E.D.N.Y. 2003) ............................................................................... 8, 11

*Warshaw v. Mendelow*, et. al., No. 652173/2010
(N.Y. Sup. Ct. N.Y. Co. filed Dec. 3, 2010) ............................................................................ 1

*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971) ......................................... 8

**Statutes**

11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code") ....................................................... 1

11 U.S.C. §105 ............................................................................................... *passim*

11 U.S.C. § 362 ............................................................................................. *passim*

11 U.S.C. § 541(1)(a)(1) ................................................................................................. 2

28 U.S.C. § 2283 ............................................................................................................. 8

Larry Warshaw and Carol Warshaw as Trustees for Carol Ann Enterprises, Inc. Pension Plan and Sajust, LLC (collectively the "Warshaw Plaintiffs") respectfully submit this opposition to the motion by Steven Mendelow (the "Mendelow Motion") to enforce the automatic stay under § 362 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code") and the stay orders of the District Court, and to enjoin the Warshaw Plaintiffs in *Warshaw v. Mendelow*, et. al., No. 652173/2010 (N.Y. Sup. Ct. N.Y. Co. filed Dec. 3, 2010)(the "Warshaw Action") under §105 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

On March 1, 2011, Irving H. Picard, Esq. ("Trustee"), trustee for the substantively consolidated Securities Investor Protection Act ("SIPA") liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff") filed an objection to Mendelow's Stay Motion ("Trustee's Obj.").[1] As the Trustee cogently argued, Mr. Mendelow, as a non-creditor and mere defendant in a fraudulent conveyance action, lacks standing to enforce the automatic stay under §362 and the Stay Orders, or under §105 to seek to enjoin the Warshaw Action. Thus, as the Trustee adeptly argues, the Mendelow Motion must be denied as it improperly seeks to enforce the Trustee's "exclusive rights" under 11 U.S.C. §§ 105 & 362 and the Stay Orders.

The Mendelow Motion constitutes nothing more than a transparent attempt to delay and add expense to the Warshaw Action. Despite having asserted his Fifth Amendment Rights Against Self-Incrimination with respect to Madoff's payment to him of millions of dollars in

---

[1] Out of judicial economy, the Warshaw Plaintiffs adopt the description of the procedural history of these SIPA proceedings, including the issuing of the Stay Orders, set forth in the Trustee's Objection and in this Court's decision in *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010). Further, out of judicial economy, the Warshaw Plaintiffs adopt the description contained in the Trustee's Objection of the procedural history of: i) the Trustee's filing of the "Mendelow Action" to recover fraudulent transfers from BLMIS to Mendelow; ii) the filing of the Warshaw Action and iii) the filing of the Mendelow motion.

1

kickbacks for his referral of investors to BLMIS, Mendelow cynically seeks to enforce the automatic stay out of a supposed concern for BLMIS' creditors. Accordingly, for the reasons set forth below and in the Trustee's well-reasoned Objection, the Warshaw Plaintiffs respectfully request that this Court deny the Mendelow Motion.

## LEGAL ARGUMENT

### I. MENDELOW LACKS STANDING UNDER §§ 362 AND 105 OF THE BANKRUPTCY CODE TO ENJOIN THE WARSHAW ACTION.

The Trustee's commencement on December 15, 2008 of the SIPA liquidation of BLMIS triggered an "automatic stay" of, *inter alia*, "the commencement or continuation…of judicial, administrative, or other action or proceeding against the debtor," or "any act to obtain possession of … or to exercise control over property of the estate." 11 U.S.C. §362(a)(1). Pursuant to 11 U.S.C. § 541(1)(a)(1), "property" of the estate is defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case," including "causes of action possessed by the debtor at the time of filing." *In re Jackson*, 593 F.3d 171, 176 (2d Cir. 2010). Mendelow, as a mere defendant in a fraudulent conveyance action brought by the Trustee, plainly lacks standing to enforce the automatic stay provisions afforded by 11 U.S.C. § 362. *See, e.g., In re Fiber Optek Interconnect Corp.*, 2009 Bankr. LEXIS 3040 at *16 (Bankr. S.D.N.Y. September 23, 2009); *In re Silverman*, 42 B.R. 509, 516 (Bankr. S.D.N.Y. 1984) and Trustee's Obj., *in passim*.

Mendelow also seeks to stay the Warshaw action pursuant to § 105 of the Bankruptcy Code. §105(a) of the Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. §105. Pursuant to §105(a), a bankruptcy court may stay third-party actions against non-debtors, even if such relief would not be appropriate under § 362, "when a claim against the non-debtor will have an

immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. V. NyGard Int'l*, 321 F.3d 282, 287 (2d. Cir. 2003). [2]

The Trustee convincingly argues that "Mendelow lacks standing to move the court to enjoin the Warshaw Action under 11 U.S.C. §105." Trustee Obj. p. 5. As Judge Glenn of this Bankruptcy Court recently held, "[t]he estate or estate representative is the entity with standing to seek an injunction under section 105." *OMC, Inc. v. Local Union 28 of the Sheet Metal Workers' Int'l Union* (In re OMC, Inc.), 2010 Bankr. LEXIS 3600, at *7 (Bankr. S.D.N.Y. October 13, 2010)(*citing* 2 Collier on Bankruptcy at ¶105.03[1]).

The Trustee generously construes Mendelow's motion for a stay as raising the question as to whether Mendelow has "derivative standing" to move this Court to enjoin the Warshaw Action under §105. See Trustee Obj. p. 6. However, the doctrine of "derivative standing" only permits a "*creditor or creditors' committee* under certain narrow conditions to file an action in bankruptcy court in place of the debtor-in-possession or trustee." *Scott v. Nat'l Century Fin. Enters. (In re Baltimore Emergency Servs. II)*, 432 F.3d 557, 560 (4th Cir. 2005)(emphasis added); *In re Smart World Techs., LLC v. Juno Online Servs., Inc., (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 & n. 15 (2d Cir. 2005).

Mendelow does not cite to a single authority holding that a mere defendant in a fraudulent conveyance action brought by a trustee can avail himself of the "derivative standing" doctrine to

---

[2] Typically, courts issue § 105 injunctions because: i) a third-party suit threatens to "thwart or frustrate the debtor's reorganization efforts" or ii) when an adverse judgment in litigation against a non-debtor "will collaterally estop the debtor in subsequent litigation." *Calpine Corp. et. al. v. Nevada Power Co., (In re Calpine Corp.)*, 354 B.R. 45, 48-49 (Bankr. S.D.N.Y. 2006). Neither of these concerns is raised by the Warshaw Action. Rather, the BLMIS estate is being liquidated, not reorganized and a judgment against Mendelow will in no way collaterally estop the debtor.

stay a separate state court action against him. Nor has Mendelow articulated a justification for such a significant expansion of the "derivative standing doctrine." As one federal circuit court of appeals has warned:

> This case aptly demonstrates the potential consequences of a relaxed derivative standing doctrine. As we have repeatedly stated, preliminary injunctions are extraordinary remedies involving the exercise of far reaching power to be granted only sparingly and in limited circumstances. A court greatly exceeds its power, and may effect grave harm, by granting such a remedy to a party that has not demonstrated standing to request it.

*Scott*, 432 F.3d at 563.

Accordingly, this Court should deny the Mendelow Motion based on Mendelow's lack of standing under §§ 362 and 105.

## II. THE TRUSTEE HAS ACTED APPROPRIATELY IN DECLINING TO SEEK TO STAY THE WARSHAW ACTION.

The Mendelow Motion further implies without expressly arguing that the Trustee has acted unjustifiably in refusing to seek a stay of the Warshaw Action under §362 or to enjoin it under § 105.[3] In so doing, Mendelow relies heavily on this Court's holding that the claims at issue in *Picard v. Fox* were property of the BLMIS estate. As explained more fully below, Mendelow misconstrues this authority as the Warshaw Plaintiffs suffered an injury "significantly different from the injuries to creditors in general." *See Picard v. Fox*, 429 B.R. 423, 431 (Bank. S.D.N.Y. 2010). Further, the Trustee's refusal to seek an injunction on behalf of the BLMIS estate here, as the Trustee did in *Fox*, evidences that the Warshaw Actions will not cause

---

[3] The Trustee's Objection does note that there have been cases allowing parties other than the Debtor or the Trustee to seek a stay where the Trustee has shirked his statutory responsibilities in seeking a stay. *See* Trustee Obj., p. 7. The Trustee persuasively argues that these cases are completely distinguishable.

4

irreparable harm to the Debtor. *See, e.g., In re Johns-Manville Corp.*, 26 Bankr. 405, 417 (S.D.N.Y. 1983). [4]

In *Picard v. Fox*, this Court enjoined a purported class action lawsuit filed in federal court in Florida on behalf of BLMIS' customers ("Florida Plaintiffs") against the Estate of Jeffrey Picower for his role in receiving over $5 billion in fraudulent conveyances from BLMIS. The Trustee had filed a fraudulent conveyance suit earlier seeking the recovery of the same funds transferred to Picower, a favored BLMIS investor. This Court ruled that the Florida Plaintiffs' claim was "a general one, with no particularized injury [to any of the Florida Plaintiffs] arising from it," and therefore the Trustee was the proper party to assert the claim. *Id*. at 431.

Significantly, the Florida Plaintiffs were not in privity in any way with Picower, who had no role inside BLMIS. The Florida Plaintiffs did not allege that Picower owed a separate duty or caused a separate harm to them beyond Picower's alleged depletion of the BLMIS customer property fund. *Id*. at 431-432. Undeniably, by filing a purported class action on behalf of BLMIS' customers to recover fictitious profits conveyed from BLMIS to Picower the Florida

---

[4] This Court's granting of the Trustee's motion for a stay in *Picard v. Stahl*, 2011 WL 439532 (Bankr. S.D.N.Y. Feb. 9, 2011) does not support enjoining the Warshaw Action either. In *Stahl*, the Trustee's application for a stay explained that: "There are currently twelve Third Party Actions pending against Madoff family members which the Trustee believes seek customer property in the guise of damages. Of those twelve actions, three are against Madoff Defendants only and the remaining nine sue other defendants as well. *At this time, the Trustee seeks an injunction only as to the Madoff Defendants, not other defendants*." Trustee's Memorandum of Law in Support of his Motion to Enjoin the Stahl Action, p. 10 (emphasis added), Adv. Pro. No. 10-03268 (BRL), Docket # 2. Further, in *Stahl*, the Trustee asserted, based on financial disclosures made by the Madoff Defendants, that nearly all of the Madoff Defendants' income was derived from BLMIS while serving in an executive capacity at BLMIS. Here, in contrast, Mendelow, a Principal of Konigsberg and Wolf, P.C. and a member of the Board of Directors for a number of companies, has submitted no admissible evidence whatsoever with respect to his amount of funds, the source of his funds and his disposition of the kickbacks he received from BLMIS.

5

Plaintiffs were "seeking to redress a harm common to all BLMIS customer claimants." *Id.* at 432.

This Court contrasted the Florida Actions with *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575 (5th Cir. 2008), which held that claims by bondholders who were fraudulently induced to purchase the debtor's notes were not property of the estate. 429 B.R. at 432-433. As this Court explained, "it is possible for a bankruptcy estate and a creditor to own separate claims against third parties arising out of the same general conduct." *Id.* at 433. The bondholders in *Seven Seas,* as this Court observed, suffered an injury distinct from Chesapeake's other creditors "because only the bondholders relied upon the misrepresentations." *Id.* In contrast, this Court held that in the Florida Actions, the "injuries alleged, as well as the purported source of those injuries, [were] common to BLMIS and all BLMIS customers." *Id*.

Further, the Florida Actions violated the Automatic Stay because they sought to recover fraudulent conveyances from BLMIS to Picower; i.e., funds transferred from BLMIS to Picower with the intent of placing the funds beyond the reach of BLMIS' creditors. *Id*. at 432.[5] What the Warshaw Plaintiffs allege, however, is "quite different," as the Warshaw Plaintiffs seek the recovery of monetary damages resulting from Mendelow's misrepresentations directed exclusively at them. *See, e.g., Trefny v. Bear Sterns Sec. Corp.*, 243 B.R. 300, 322-323 (S.D.

---

[5]There is no basis upon which this Court can conclude that prosecution of the Warshaw Action will impair Mendelow's ability to satisfy any judgment that the Trustee might obtain in his fraudulent conveyance action. Mendelow is a "solvent, nonbankrupt" individual and "there is no evidence of record that [he] will be unable to satisfy any judgments which may ultimately be entered against [him]." *In re Phar-Mor Sec. Litig.*, 164 B.R. 903 (W.D. Pa. 1994). Mendelow, an experienced financial advisor, has completely failed to submit any admissible evidence regarding what he did with the millions he received from Madoff or his ability to satisfy the various potential judgments.

6

Tex. 1999)(distinguishing between claims seeking the recovery of fraudulent conveyances from claims for monetary damages arising from a fraudulent inducement).

Thus, Mendelow incorrectly asserts that the Warshaw Plaintiffs have not "suffered any injury significantly different from the injuries to general creditors in general." Contrary to Mendelow's argument, only a small percentage of BLMIS' customers had any interaction with Mendelow, who had no role inside BLMIS and whose involvement with Madoff appears to be limited to the recruitment of a small subset of Madoff's investors. The Trustee's determination that the Warshaw Action does not constitute property of the Estate also is consistent with a number of federal cases holding that investors' fraudulent inducement claims against third-party accountants were not property of the debtor's estate. *See, e.g., In re Phar-Mor Sec. Litig.*, 164 B.R. 903 (W.D. Pa. 1994)(claims by plaintiffs seeking the recovery of money invested in debtor in reliance on representations made by non-bankrupt accountants); *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1093-1094 (2d Cir. 1995) (injury claims predicated on the auditors' preparation of misleading private placement memoranda which the auditors distributed to investors are particularized claims belonging to investors). Accordingly, this Court should reject the assertion that the Trustee has shirked his responsibility by declining to seek a stay of the Warshaw Action.

### III. THIS COURT SHOULD NOT STAY THE WARSHAW ACTION OUT OF CONCERN FOR MENDELOW'S FIFTH AMENDMENT RIGHTS.

Mendelow further contends that "the Warshaw Action should be stayed to avoid unnecessary injury to his Fifth Amendment Rights" against self-incrimination. Mendelow Motion, p. 14. Mendelow's argument must be rejected for two reasons. First, Mendelow was required to present this argument to the New York State Court presiding over the Warshaw Action, not this Bankruptcy Court. Secondly, even if this Court decides to reach the merits of

7

this argument, this Court should then find that Mendelow's potential invocation of his Fifth Amendment Rights in the Warshaw Action does not warrant staying the Warshaw Action.

The Anti-Injunction Act bars federal courts from "granting an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "In interpreting the Anti-Injunction Act, the Supreme Court has directed that any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Ret. Sys. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004).

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971), the United States Supreme Court instructed that principles of "comity and federalism" require that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." Under *Younger*, abstention is necessary, even if jurisdiction is not foreclosed by the Anti-Injunction Act, when "1) there is a pending state proceeding, 2) that implicates an important state interest, and 3) the state proceeding affords the federal plaintiff an opportunity for judicial review of his or her federal constitutional claims." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100-101 (2d Cir. 2004).

Mendelow attempts to shoehorn his argument about his Fifth Amendment rights into his motion to enforce the automatic stay because §§ 105 & 362 of the Bankruptcy Code, as Acts of Congress, provide an exception to the Anti-Injunction Act. However, there is no connection whatsoever between the purpose of these statutes in guarding property of the Debtor's Estate and the personal (and illegitimate) concerns of Mendelow regarding his assertion of his Fifth Amendment Rights. Therefore, as substantial doubts, to say the least, "exist as to the propriety

of [issuing] a federal injunction" under the Anti-Injunction Act against the Warshaw Action, this Court should permit the New York State Court to determine the controversy. *J.P. Morgan*, 386 F.3d 425. Further, out of principles of comity and federalism under *Younger*, this Court should abstain from hearing Mendelow's arguments about his Fifth Amendment rights in deciding the Mendelow Motion.[6]

Even if this Court were to reach the substance of Mendelow's claims regarding his Fifth Amendment Rights, then this Court should hold that Mendelow's potential need to invoke his Fifth Amendment Rights does not warrant a stay of the Warshaw Action. Mendelow contends that the Warshaw Plaintiffs' assertions that he participated in Madoff's fraud forces him to choose between "foregoing the exercise of his Fifth Amendment Right not to testify and potentially losing the Warshaw Action as the result of the imposition of a negative inference." *See* Mendelow Motion, p.14. However, Mendelow has not been indicted. Moreover, he merely speculates that the law enforcement agencies investigating BLMIS will focus upon his involvement with Madoff if the Warshaw Action is not stayed. According to Mendelow's logic, as long as there is a possibility that discovery in the Warshaw Action will intensify law enforcement's interest in his involvement with BLMIS, the Warshaw Action must be stayed out of a concern for his Fifth Amendment Rights. As set forth below, Mendelow's effort to delay the Warshaw Action indefinitely must be denied due to the prejudice it will cause to the Warshaw Plaintiffs.

---

[6] Mendelow had a full opportunity to be heard in the New York State Court regarding his motion for a stay of the Warshaw Action due to his concerns about his 5th Amendment Rights. *See, e.g., Access Capital, Inc. v. Decicco*, 302 A.D.2d 48 (1st Dep't 2002)(affirming the denial of defendant's motion to stay a N.Y. civil action against him pending resolution of criminal proceedings against him in New Jersey).

9

There is no constitutional requirement that a civil lawsuit be stayed pending the outcome of parallel criminal proceedings. *Sterling National Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp.2d 573, 576 (S.D.N.Y. 2001). In deciding when the "interests of justice" require granting the extraordinary remedy of a stay, federal courts weigh factors such as:

> 1) the interests of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; 2) the burden which any particular aspect of the proceedings may impose on the defendants; 3) the convenience of the court in the management of its cases;[7] 4) the interests of persons not parties to the civil litigation; and 5) the interests of the public in the pending civil and criminal litigation.

*Sterling*, 175 F. Supp. at 576.

Here the balance of factors strongly weighs against staying the Warshaw Action. Mendelow's concern that law enforcement is investigating BLMIS generally should be given no weight as "it is universally agreed that the mere pendency of a criminal investigation standing alone does not require a stay." *Id.* (refusing to delay "indefinitely" a civil action due to the burden on the court and the plaintiffs); *Scipar, Inc. v. Simses*, 2008 U.S. Dist. LEXIS 63796 *6 (W.D.N.Y. 2008)(denying request for a stay where the defendant had failed to introduce any evidence establishing that she is under criminal investigation, and if so, the status of the investigation). Further, "pre-indictment requests for a stay of civil proceedings are generally denied" given the uncertainty of the actual imposition of parallel criminal proceedings and the longer delay needed to protect the defendant's Fifth Amendment Rights until the conclusion of any criminal proceedings that might be initiated. *U.S. Commodities Futures Trading*

---

[7] Indeed, only the New York State Court can assess its own convenience in the management of its own docket. Thus, the consistent recognition by federal courts within the Second Circuit Court of Appeals of the "convenience of the court in the management of its cases" as one of the guiding factors in the stay analysis supports the conclusion that Mendelow was required to present this argument to the New York Court presiding over the Warshaw Action.

*Commission v. A.S. Templeton Group, Inc.*, 297 F.Supp.2d 531, 535 (E.D.N.Y. 2003); *Sterling*, 175 F. Supp. at 576.

The Warshaw Plaintiffs will be substantially prejudiced if the Warshaw Action is stayed indefinitely while law enforcement's lengthy and open-ended investigation into the largest fraud in our history continues. During such an open-ended delay, the Defendants in the Warshaw Action could disperse or hide assets or destroy evidence before the Warshaw Plaintiffs have the opportunity to engage in any meaningful discovery. Tellingly, Mendelow does not contend that discovery in the Warshaw Action will exonerate him and discourage law enforcement from examining his role further. For these reasons, Mendelow cannot make the necessary showing to obtain the "extraordinary remedy" of a stay.

## CONCLUSION

WHEREFORE, for the reasons set forth above, and in the Trustee's Objection to the Mendelow Motion, the Warshaw Plaintiffs respectfully request that this Court deny the Mendelow Motion.

Dated: New York, New York
March 15, 2011

                THE KAGEN LAW FIRM

                By:___/s/ Russell Bogart_____
                    Russell Bogart
                    Of Counsel
                    The Kagen Law Firm
                    400 Park Avenue, Suite 1420
                    New York, N.Y. 10022
                    Telephone: (212) 880-2045
                    Fax: (646) 304-7879
                    Email: rbogart@kagenlaw.com
                    *Attorneys for Larry Warshaw and*
                    *Carol Warshaw as Trustees for*
                    *Carol Ann Enterprises, Inc. Pension*
                    *Plan, and Sajust, LLC*