UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  

Hearing Date: April 6, 2011

------------------------------------------------------------------------x
: 
In re: : SIPA LIQUIDATION
: 
BERNARD L. MADOFF INVESTMENT SECURITIES : Index No. 08-01789 (BRL)
LLC, :
:
                Debtor. :
:
IRVING H. PICARD, Trustee for the Liquidation of : Adv. Pro. No. 10-04283 (BRL)
Bernard L. Madoff Investment Securities LLC, :
:
                Plaintiff, :
:
   - against - :
:
:
STEVEN B. MENDELOW, NTC & Co. LLP, as former :
custodian of an Individual Retirement Account for the :
benefit of STEVEN B. MENDELOW, NANCY :
MENDELOW, NTC & Co. LLP as former custodian of :
an Individual Retirement Account for the benefit of :
NANCY MENDELOW, CARA MENDELOW, :
PAMELA CHRISTIAN, C&P ASSOCIATES, LTD., :
and C&P ASSOCIATES, INC., :
:
                Defendants. :
------------------------------------------------------------------------x

**DEFENDANT STEVEN B. MENDELOW'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR THE ENFORCEMENT OF
<u>THE AUTOMATIC STAY AND FOR A PRELIMINARY INJUNCTION</u>**

Stanley S. Arkin  
Michelle A. Rice  
ARKIN KAPLAN RICE LLP  
590 Madison Avenue  
New York, NY 10022  

*Attorneys for Defendant Steven B. Mendelow*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I. THE *WARSHAW* ACTION SHOULD BE ENJOINED ...................................................... 2

II. MENDELOW'S FIFTH AMENDMENT RIGHTS SHOULD BE PROTECTED ............ 8

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Fogel v. Zell*,
   221 F.3d 955 (7th Cir. 2000) ................................................................................................ 3

*In re Dinova*,
   212 B.R. 437 (B.A.P. 2d Cir. 1997) ....................................................................................... 1

*In re Gibson Group, Inc.*,
   66 F.3d 1436 (6th Cir. 1995) ................................................................................................. 3

*In re Ionospehere Clubs, Inc.*,
   101 B.R. 844 (Bankr. S.D.N.Y. 1989) ................................................................................... 3

*In re STN Enterprises*,
   779 F.2d 901 (2d Cir. 1985) .................................................................................................. 3

*Picard v. Cohmad, et al.*,
   Adv. Proc. 09-1305 (BRL) (S.D.N.Y. 2009) ..................................................................... 4, 5

*Picard v. Ditcher-Mad Family Partners, LLP, et al.*,
   Adv. Proc. 11-01271 ............................................................................................................... 5

*Picard v. Fox*,
   429 B.R. 423 (Bankr. S.D.N.Y. 2010) ................................................................................... 7

*Picard v. Stahl*,
   2011 WL 439532 (Bankr. S.D.N.Y. Feb. 9, 2011) ......................................................... passim

*SEC v. Cohmad Secs. Corp.*,
   2010 U.S. Dist. LEXIS 8597 (S.D.N.Y., Feb. 1, 2010) ......................................................... 8

*United States v. Certain Real Property and Premises Known as*
   *1344 Ridge Road, Laurel Hollow, Syosset, New York*,
   et al., 751 F. Supp. 1060 (E.D.N.Y. 1989) ............................................................................. 8

*United States v. Certain Real Property and Premises Known as*
   *4003-4005 5th Ave., Brooklyn, N.Y.*,
   55 F.3d 78 (2d Cir. 1995) ............................................................................................... 10, 11

*Warshaw, et al. v. Mendelow, et al.*,
   No. 652173/2010 (Sup. Ct., N.Y. County, February 17, 2011) ......................................... passim

*Weinberg v. Mendelow, et al.*,
   No. 652222/2010 (Sup. Ct., N.Y. County, December 9, 2010) ............................................ 8

**Statutes**

11 U.S.C. § 105 ............................................................................................................... 2, 3, 9

11 U.S.C. § 362 ...................................................................................................................... 9

11 U.S.C. § 1109(b) ............................................................................................................... 3

Defendant Steven B. Mendelow ("Mendelow"), by his attorneys, respectfully submits this reply memorandum of law in further support of his Motion for the Enforcement of the Automatic Stay and for a Preliminary Injunction filed on January, 18, 2011 and in reply to both the Trustee's Objection to Steven B. Mendelow's Motion for the Enforcement of the Automatic Stay and for a Preliminary Injunction (hereinafter, the "Trustee's Objection") and the *Warshaw* Plaintiffs' Objection to Steven Mendelow's Motion for the Enforcement of the Automatic Stay and for a Preliminary Injunction (hereinafter, the "*Warshaw* Objection").

## PRELIMINARY STATEMENT

As a fiduciary, a bankruptcy trustee is expected to "bring all conditions and circumstances that are relevant in a given case directly before the court." *In re Dinova*, 212 B.R. 437, 447 (B.A.P. 2d Cir. 1997).[1] Here, instead of elucidating his reasons for refusing to move to enjoin the *Warshaw* Action, which clearly seeks to leapfrog over BLMIS investors and remove customer property from the Madoff Estate, the Trustee's Objection contains little more than a perfunctory recitation of broad principles of law and a conclusory ultimate statement that neither the "integrity of the bankruptcy process" nor the "jurisdiction of the bankruptcy court" are threatened by allowing the *Warshaw* Action to proceed. The Trustee reaches this conclusion without engaging in any analysis of the patent violation of the automatic stay and/or the Stay Orders by the *Warshaw* Plaintiffs. Indeed, the Trustee's Objection is so vague on the issue of whether there has been a violation of the automatic stay and Stay Orders that, in the *Warshaw* Objection, the *Warshaw* Plaintiffs wrongly deduce that they have not violated the automatic stay

---

[1] Bankruptcy trustees "appearing before a federal court are its officers…[t]hey owe the court and the public duties of good faith and complete candor in dealing with the judiciary…[s]elective omission of relevant information, therefore, exceeds the bounds of zealous advocacy and is wholly inappropriate." *In re Dinova*, 212 B.R. 437, 447 (B.A.P. 2d Cir. 1997).

because the Trustee has made the "determination that the *Warshaw* Action does not constitute property of the [Madoff] Estate…"

Even on the critically important issue of Mr. Mendelow's "derivative standing" under 11 U.S.C. § 105, the Trustee avers only that Mr. Mendelow cannot avail himself of the exception because the Trustee has moved to enjoin a few third party actions brought against defendants other than Mr. Mendelow. While this may well establish that the Trustee was not "shirking his statutory responsibilities" to the Estate with respect to those other proceedings, it cannot and should not serve as proof that the Trustee is fulfilling his statutory mandate here. To the contrary, precisely because the Trustee provides no standards by which to measure his judgment and decision not to seek to enjoin the *Warshaw* Action, the Court and the public can reach no conclusion other than the Trustee has failed to fulfill his fiduciary responsibilities to the Estate.

Mr. Mendelow's motion to enjoin the *Warshaw* Action is by no means unprecedented and granting the motion would not place an undue burden on the resources of the Estate (and the Trustee has not claimed otherwise). The Trustee has made substantially similar and well-supported motions in *Stahl*, *Ditcher-Mad Family Partners*[2] and *Fox*, all of which have been granted by this Court. Consistently, and in the compelling interest of protecting customer property of the Estate, Mr. Mendelow's motion to enjoin the *Warshaw* Action should be granted.

## ARGUMENT

### I. THE *WARSHAW* ACTION SHOULD BE ENJOINED

As even the Trustee acknowledges, derivative standing under 11 U.S.C. § 105 will be found to exist "where the party whose rights are being vindicated is unable (*or unreasonably fails*) to assert those rights on its own behalf." Trustee's Objection at 6 (emphasis added). *See*

---

[2] The motion in *Ditcher-Mad Family Partners* was not ruled on, since a stay was stipulated to between the parties.

*also Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000) ("The right to bring a derivative claim…depends on showing that the primary claimant has unjustifiably failed to pursue the claim."). A party in interest[3] acquires derivative standing where (i) a demand has been made upon the Trustee; (ii) the demand is denied; (iii) there is a colorable claim that, if successful, would benefit the estate, and (iv) the Trustee's failure to act constitutes an unjustified abuse of his or her discretion. *See, e.g., In re STN Enterprises*, 779 F.2d 901 (2d Cir. 1985); *In re Gibson Group, Inc.*, 66 F.3d 1436, 1446 (6th Cir. 1995). Because Mr. Mendelow can establish that all of these conditions have been met here, the Court should find that he has derivative standing to make this motion for an injunction pursuant to 11 U.S.C. § 105.

First, the Trustee was asked to join Mr. Mendelow's motion, or to bring his own motion, to enjoin the *Warshaw* Action. Affirmation of Michelle Rice dated March 25, 2011 ("Rice Aff."), ¶ 2 and Ex. A.

Second, counsel for the Trustee refused to join the motion or bring their own motion on behalf of the Trustee. Rice Aff. ¶ 3.

Third, the grant of an injunction to stay the *Warshaw* Action would provide a substantial benefit to the Estate as well as aid in its administration. In their action against Mr. Mendelow, the *Warshaw* Plaintiffs are seeking, as damages, the return of the principal they invested in an FGLS Equity, LLC ("FGLS") customer account with BLMIS. Although the wording of the

---

[3] In their Objection, the *Warshaw* Plaintiffs make the erroneous assertion that derivative standing is only available to creditors and creditors' committees. *Warshaw* Objection at 2-4. In the Bankruptcy context, the doctrine of derivative standing stems in part from 11 U.S.C. § 1109(b), which provides a broad right to be heard on any issue in a Chapter 11 case to any party in interest. 11 U.S.C.A. § 1109(b) (West) ("A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."). Although 11 U.S.C. § 1109(b) enumerates certain parties in interest, this listing is by no means an exhaustive or exclusive one. Clearly, as a defendant in this adversary proceeding, Mr. Mendelow is a party in interest for purposes of 11 U.S.C. 1109(b). *See, e.g., In re Ionospehere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (Lifland, J.) (holding that, in the context of 11 U.S.C. § 1109(b), "those parties sufficiently affected by a Chapter 11 proceeding should be able to appear before it and be heard.").

*Warshaw* claims against Mr. Mendelow is not identical to the language of the claims asserted by the Trustee, their injury is derivative because it is no different than the injuries sustained by other investors in the Madoff Ponzi scheme.[4] *See Picard v. Stahl*, 2011 WL 439532 at *11, n. 20 (Bankr. S.D.N.Y. Feb. 9, 2011) (explaining that a crucial element in comparing third-party claims to Trustee's claims is fact that "the injuries alleged, as well as the purported original source of those injuries, are common to BLMIS and all of its customers and creditors."). Indeed, by seeking the return of the principal investment as their damages, the *Warshaw* Plaintiffs virtually concede that Mr. Mendelow did not cause them a distinct or unique harm. *See Warshaw et al. v. Mendelow et al*, No. 652173/2010 (Sup. Ct., N.Y. County, February 17, 2011) Dkt. No. 15 (*First Amended Complaint*) at ¶ 8 and "WHEREFORE" clause (noting that the *Warshaw* Plaintiffs' alleged losses in BLMIS through FGLS amount to $2,676,434 and demanding damages in that amount).

The Trustee should agree.[5] In a recent adversary proceeding in this very liquidation proceeding, the Trustee took the position that certain third party claims were "absolutely derivative of" the Trustee's claims where those third parties were in privity with a "finder" for BLMIS who had raised funds from a very limited number of investors. *See Picard v. Cohmad, et al.*, Adv. Proc. 09-1305 (BRL) (S.D.N.Y. 2009) Dkt. No. 200, at 21 (*Transcript Regarding Hearing Held on 2/2/2011 10:13 AM RE: Robert M. Jaffe's Motion to Enforce the Settlement*

---

[4] Although the *Warshaw* Plaintiffs make allegations of professional malpractice, breach of fiduciary duty, fraud and conspiracy to defraud, negligent misrepresentation, and aiding and abetting in the *Warshaw* Action, the *Warshaw* Plaintiffs make no allegation that any conduct by Mr. Mendelow, independent of his alleged participation in the Ponzi scheme, or lack of diligence in investigating the Ponzi scheme, harmed them. And, the damages sought by the *Warshaw* Plaintiffs are based entirely on their investments with BLMIS. *See Warshaw et al. v. Mendelow et al*, No. 652173/2010 (Sup. Ct., N.Y. County, February 17, 2011) Dkt. No. 15 (*First Amended Complaint*) at ¶¶ 82-110.

[5] The Trustee expressly reserved the right to "continue to monitor the *Warshaw* [A]ctions" and "take all necessary and appropriate action to protect the BLMIS estate if and when such action is warranted." Trustee's Objection at 8-9. This express reservation of rights strongly suggests the Trustee views the *Warshaw* claims as customer property of the BLMIS estate, and therefore derivative of the Trustee's claims.

*Order of 12/21/2010 and Enjoining the Continued Prosecution of the Third Party Actions*) ("all three of [the *Cohmad* third party] complaints are absolutely derivative of the Trustee's allegations against Cohmad.").[6] In that case, as in this one, the alleged claims of the third parties were styled differently than those alleged by the Trustee. And, like the instant situation, the finder was subsequently sued by disgruntled investors, for claims other than fraudulent transfers, in fora other than this Court.

Here, the third parties are in privity with Mr. Mendelow, in that he is alleged to have "pitched" Madoff and BLMIS to the *Warshaw* Plaintiffs and "referred" investors to BLMIS. *See Warshaw et al. v. Mendelow et al*, No. 652173/2010 (Sup. Ct., N.Y. County, February 17, 2011) Dkt. #15 (*First Amended Complaint*) at ¶ 3-4. Thus, as in *Cohmad*, the third party claims are derivative of the Trustee's claims. Stated differently, the *Warshaw* Action, brought outside of the jurisdiction of this Court, is nothing more than "[an] attempt[] by the [*Warshaw* Plaintiffs] to satisfy claims relating to their investments in, or dealings with, BLMIS or BLMIS's feeder funds by circumventing the claims determination and allowance process, of which [] the [*Warshaw* Plaintiffs] are either direct or indirect participants." *Picard v. Stahl*, Adv. Pro. No. 10-03268 (BRL) (Bankr. S.D.N.Y. 2010) Dkt. No. 2 at 35 (*Memorandum Of Law In Support Of Trustee's Application For Enforcement Of Automatic Stay And Preliminary Injunction*). Thus, Mr. Mendelow possesses a colorable claim that, if successful, would benefit the BLMIS estate.

---

[6] The Trustee also stated that "[t]he allegations set forth by the BLMIS Account Holders in the [*Cohmad*] Third Party Actions substantially mirror those set forth by the Trustee in the Cohmad Adversary Proceeding." *See Picard v. Ditcher-Mad Family Partners, LLP, et al.*, Adv. Pro. No. 11-01271, Dkt. No. 1 (Complaint) at ¶ 5. With regard to those particular actions, according to the Trustee, "[a]part from asserting seven different actions, each of the Third Party Actions is duplicative or derivative of the Trustee's complaint against the Cohmad Defendants [a complaint that also named Jaffe], in that the BLMIS Account Holders seek to recover for losses they suffered as investors in BLMIS based upon the same types of allegations that the Trustee asserted against the Cohmad Defendants [including Jaffe]." *Id*. ¶ 45. The Trustee's Complaint in *Ditcher-Mad* explains that "[a]ll of the allegations relate to a common nucleus of operative facts, including the Madoff fraud and the Cohmad Defendants conduct with respect to that fraud." *Id*. at ¶ 45.

5

Finally, the Trustee abused his discretion by failing to act to enjoin the *Warshaw* Action. The Trustee's sole justification for his inaction is that he is "demonstrably willing and able to vindicate his rights to enjoin third party actions when necessary and appropriate to protect the BLMIS estate." Trustee's Objection at 6-7. But this does not prove that the Trustee is acting reasonably by refusing to vindicate those same rights here. Indeed, identifying other instances where the Trustee has sought to enjoin third party actions only bolsters Mr. Mendelow's argument that the Trustee is acting unreasonably here and further proves, by the Trustee's own admission, that he is "cherry-picking" the situations where he seeks preclusion of third party actions and without any regard to whether there has been a violation of the automatic stay and Stay Orders.

Reading between the lines of the Trustee's Objection, it appears that the Trustee's inaction may be based on some determination – not yet revealed – that Mr. Mendelow may have sufficient assets to satisfy the *ad damnum* in the Trustee's complaint and in the *Warshaw* Action. But even if this is the Trustee's unstated position, it is at odds with the Trustee's demonstrated actions in other adversary proceedings. *Stahl* is illustrative. In that adversary proceeding, the Trustee did not make the argument that the *Stahl* defendants did not have sufficient funds to satisfy all judgments, if eventually obtained; nor did the Trustee mention the *Stahl* defendants' financial means when he was seeking to enforce the automatic stay. *See Stahl*, Adv. Pro. No. 10-03268 (BRL) (Bankr. S.D.N.Y. 2010) Dkt. No. 2 (*Memorandum of Law in Support of Trustee's Application for Enforcement of Automatic Stay and Preliminary Injunction*); *see also* Dkt. No. 30 (*Reply Memorandum of Law in Support of Trustee's Application for Enforcement of Automatic Stay and Preliminary Injunction*) (neither memorandum putting forth an argument that the *Stahl* defendants lacked the funds necessary to fully satisfy the Trustee's demand). In

*Stahl*, the Trustee merely argued that the defendants' assets were customer property. *See Stahl*, Adv. Pro. No. 10-03268 (BRL) (Bankr. S.D.N.Y. 2010) Dkt. No. 30, at 5-9 (*Reply Memorandum of Law in Support of Trustee's Application for Enforcement of Automatic Stay and Preliminary Injunction*). Further, when this Court enjoined the third party actions in *Stahl*, the amount of financial assets available to the *Stahl* defendants was not listed by this Court as being a reason for doing so. *See generally, Stahl*, 2011 WL439532.

Likewise, in *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), the Trustee did not argue that an injunction should be put in place because the *Picower* defendants did not have adequate financial means to satisfy any judgments awarded against them. Moreover, based on the Trustee's reported settlements with the *Picower* defendants, there is reason to believe that the Trustee knew that the *Picower* defendants had ample funds to fully satisfy every single claim brought against them by the Trustee, and yet the Trustee still sought to enjoin and stay the third party actions in *Fox*.

*Fox* and *Stahl* stand in stark contrast to the position the Trustee takes here. In those actions, the Trustee either knew that the defendants could fully satisfy the Trustee's claims, or it was completely irrelevant to his analysis of whether an injunction should be requested. Yet, he still sought a stay and injunction of the third party actions. Here, however, the Trustee appears to be arguing that he is not yet in a position to seek a stay and injunction because Mr. Mendelow might have more assets than the Trustee seeks. This reasoning is unjustifiably inconsistent and, therefore, an abuse of the Trustee's discretion.

Moreover, if the Trustee's judgment about the adequacy of Mr. Mendelow's financial resources is in error, the BLMIS estate necessarily suffers the consequences. Even if the Trustee's judgment is borne out, every day Mr. Mendelow expends substantial resources

defending himself in the outstanding lawsuits, including the *Warshaw* Action, thereby depleting the funds that might be brought into the Estate.[7]

## II. MENDELOW'S FIFTH AMENDMENT RIGHTS SHOULD BE PROTECTED

In his Main Brief, Mr. Mendelow urged that permitting the *Warshaw* Action to continue would unnecessarily cause injury to Mr. Mendelow's Fifth Amendment rights (*See* Motion at 14-16), a concern that also has been expressed by the Hon. Louis L. Stanton:

> Given the numerous criminal investigations arising from Madoff's fraud, there is a justifiable concern for anyone who did business with B[L]MIS's investment advisory unit, as did [Defendant], that he or she will be hauled into the criminal probe.

*See SEC v. Cohmad Secs. Corp.*, 2010 U.S. Dist. LEXIS 8597, *15 (S.D.N.Y., Feb. 1, 2010).

The Trustee's arguably callous response to this very serious and real concern is found in a single footnote. In contrast to the views expressed by Judge Stanton, the Trustee underplays the concern that Mr. Mendelow might be forced to prematurely exercise his Fifth Amendment rights in the *Warshaw* Action because Mr. Mendelow has not been indicted. Trustee's Objection at 4, n. 2. The *Warshaw* Plaintiffs make the same argument. *Warshaw* Objection at 7-11. Yet, there is no authority for the proposition that an indictment is a prerequisite for obtaining a stay. Indeed, there is authority to the contrary. In *United States v. Certain Real Property and Premises Known as 1344 Ridge Road, Laurel Hollow, Syosset, New York et al.*, 751 F. Supp. 1060, 1062 (E.D.N.Y. 1989), for example, the district court granted a stay in a case where there was no indictment.

---

[7] As the Trustee is aware, Mr. Mendelow has been sued by another member of FGLS for the return of his investment at BLMIS. Rice Aff. ¶ 4 and Ex. B. *Weinberg v. Mendelow et al.*, No. 652222/2010 (Sup. Ct., N.Y. County, December 9, 2010) (*Summons with Notice seeking over $1 million from Mr. Mendelow*). There is no way for Mr. Mendelow or the Trustee to accurately predict how many similar actions may be filed, or what the outcome of such actions may be; however, at a minimum, any legal fees related to defending such actions would negatively impact Mr. Mendelow's finances and necessarily deplete the funds that would be available for the Estate.

Moreover, and as noted by the *Warshaw* Plaintiffs, a stay of civil proceedings is generally not granted pre-indictment because of "the uncertainty of the actual imposition of parallel criminal proceedings…" *Warshaw* Objection at 10. Here, and as suggested by Judge Stanton, criminal and regulatory proceedings are not merely imminent, they are ongoing. Thus, however extraordinary the request for a stay may be as a general matter, it is not an extraordinary request in this instant case.

Unlike the Trustee, the *Warshaw* Plaintiffs at least attempt to weigh the factors this Court should consider in determining whether to grant the stay in order to protect Mr. Mendelow from having to prematurely invoke his Fifth Amendment rights. Not surprisingly, the *Warshaw* Plaintiffs conclude that the factors favor a denial of the motion for a stay. *Warshaw* Objection at 10.

The *Warshaw* Plaintiffs' analysis should not be credited. First, they have not articulated precisely how they would be harmed by a stay of their action given that they necessarily will be the beneficiaries of a recovery from FGLS (which has submitted a claim to the Trustee) and, as well, may recover from the Trustee's action against Mr. Mendelow (which seeks to recover the preferential transfers in FGLS' accounts from Mr. Mendelow). Indeed, allowing the *Warshaw* Action to proceed could result in a preferential recovery for the *Warshaw* Plaintiffs and would remove funds from the pool of assets constituting customer property, thereby prejudicing the interests and administration of the Estate.[8] Second, the *Warshaw* Plaintiffs do not even consider the likely possibility that the Trustee ultimately will move to stay the *Warshaw* Action should it prove to be successful and proceed to judgment before the Trustee's claims against Mr.

---

[8] Neither the Trustee nor the *Warshaw* Plaintiffs even discuss the possibility that the *Warshaw* Plaintiffs might recover more than the net equity in their FGLS account at BLMIS because they are also beneficiaries of any FGLS recovery from the Estate.

9

Mendelow are resolved. Indeed, it would be a patent fiduciary breach for the Trustee to permit the *Warshaw* Plaintiffs to satisfy any judgment they might obtain before the Trustee's cases against Mr. Mendelow and FGLS are concluded and all customer property returned to the Estate. If the *Warshaw* Action will be stayed at some point, no harm results from staying it now and there is a concomitant benefit to the Estate – *i.e.*, Mr. Mendelow will not further deplete his financial resources litigating the *Warshaw* Action and any other lawsuits that have been or may be filed by other FGLS investors. Third, there is no factual support underlying the *Warshaw* Plaintiffs' concern that Mr. Mendelow will either hide assets or destroy evidence. And, the concern that documents will be destroyed – a concern which exists in each and every litigation – has been addressed by the Trustee, when he issued a document preservation letter to Mr. Mendelow (and, we believe, every defendant in the various adversary proceedings).[9] Rice Aff. ¶ 5 and Ex. C.

While the granting of a stay in a civil proceeding in order to protect the Fifth Amendment rights of a party is an unusual occurrence, the frauds committed by Madoff and the resulting proceedings – both civil and criminal – are extraordinary in every respect. The Court should explore "all possible measures in order to select that means which strikes a fair balance…and…accommodates both parties" in a situation where, as here, an invocation of a party's Fifth Amendment rights is virtually certain to occur. *United States v. Certain Real*

---

[9] In their Fifth Amendment section, the *Warshaw* Plaintiffs fail to acknowledge that 11 U.S.C. §§ 105 and 362 provide exceptions to the Anti-Injunction Act, and this Court clearly has the authority under the Bankruptcy Code to enjoin proceedings in other courts. *See Warshaw* Objection at 8. Even if this Court holds, as the *Warshaw* Plaintiffs urge, that "substantial doubts, to say the least, exist as to the propriety of issuing a federal injunction" with regards to Mr. Mendelow's Fifth Amendment rights, such "doubts" relate *only* to those Fifth Amendment rights and *not to* the litany of other valid reasons this Court has for enjoining the *Warshaw* action. *Warshaw* Objection at 8-9.

The *Warshaw* Plaintiffs also make the incorrect argument that "Mendelow had a full opportunity to be heard in New York State Court regarding his motion for a stay of the *Warshaw* Action due to his concerns about his 5th Amendment Rights." *Warshaw* Objection at 9, n. 6. As Mr. Mendelow has not yet had to respond or otherwise move against the *Warshaw* complaint in New York State Court, the *Warshaw* Plaintiffs' argument is flatly wrong.

*Property and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F. 3d 78, 84 (2d Cir. 1995).

## **CONCLUSION**

For the foregoing reasons, Steven B. Mendelow respectfully requests that this Court (i) enforce the automatic stay and standing Stay Orders; and (ii) preliminarily enjoin the *Warshaw* Plaintiffs from litigating against Mr. Mendelow, pending the completion of the above-captioned action.

Dated: New York, NY
March 25, 2011

ARKIN KAPLAN RICE LLP

By: */s/ Stanley S. Arkin*
   Stanley S. Arkin
   Michelle A. Rice
590 Madison Avenue
New York, NY 10022
(212) 333-0200

*Attorneys for Defendant Steven B. Mendelow*