Stanley S. Arkin (SA-1373)
Michelle A. Rice (MR-4254)
Arkin Kaplan Rice LLP
590 Madison Avenue, 35th Floor
New York, New York 10022
*Attorneys for Defendants Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela Christian, C&P Associates, Ltd. and C&P Associates Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | |
|---|---|
| In re: | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Index No. 08-01789 (BRL) |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04283 (BRL) |
| Plaintiff, | |
| - against - | |
| STEVEN B. MENDELOW, NTC & Co. LLP, as former custodian of an Individual Retirement Account for the benefit of STEVEN B. MENDELOW, NANCY MENDELOW, NTC & Co. LLP as former custodian of an Individual Retirement Account for the benefit of NANCY MENDELOW, CARA MENDELOW, PAMELA CHRISTIAN, C&P ASSOCIATES, LTD., and C&P ASSOCIATES, INC., | |
| Defendants. | |

---------------------------------------------------------------x

**DEFENDANTS STEVEN B. MENDELOW, NANCY MENDELOW, CARA MENDELOW, PAMELA CHRISTIAN, C&P ASSOCIATES, LTD. AND C&P ASSOCIATES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO WITHDRAW THE REFERENCE**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| BACKGROUND OF THIS ADVERSARY PROCEEDING | | 3 |
| ARGUMENT | | 5 |
| I. | THE REFERENCE OF THIS CASE TO THE BANKRUPTCY COURT SHOULD BE WITHDRAWN | 5 |
| | A. The Bankruptcy Court is Constitutionally Prohibited from Adjudicating this Case | 5 |
| | B. Withdrawal of the Reference is Mandated Because Resolution of the Proceeding Requires the Consideration of Non-Bankruptcy Law | 6 |
| | C. The Reference Should be Withdrawn to Protect the Assets of the BLMIS Estate | 9 |
| | D. The Reference Should Be Withdrawn Because Defendants Do Not Consent To A Jury Trial in the Bankruptcy Court | 11 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

Cases

*Caplan v. Liberty Mut. Ins. Co. (In re Century Brass Prods., Inc.)*,
   1992 WL 22191 (D. Conn. Jan. 7, 1992) .................................................................................. 10

*City of New York v. Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991) ........................................................................................................ 7

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) .................................................................................................................. 5, 12

*Holland America Ins. Co. v. Roy*,
   777 F.2d 992 (5th Cir. 1985) ...................................................................................................... 10

*Holland Indus. Inc. v. Western Entertainment, Inc. (In re Mountain View Coach Line, Inc.)*,
   1989 WL 129479 (S.D.N.Y. Oct. 24, 1989) .............................................................................. 10

*In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
   2011 WL 2536101 (2d Cir. June 28, 2011) ................................................................................. 8

*Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai)*,
   136 B.R. 59 (S.D.N.Y. 1992) ..................................................................................................... 10

*Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*,
   2011 WL 3610050 (W.D. Mich. Aug. 17, 2011) ......................................................................... 6

*Messinger v. Chubb Group of Ins. Cos.*,
   2007 WL 1466835 (N.D. Ohio May 16, 2007) ............................................................................ 6

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
   4 F.3d 1095 (2d Cir. 1993) .................................................................................................. 10, 11

*Picard v. HSBC Bank PLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
   450 B.R. 406 (S.D.N.Y. 2011) ................................................................................................. 7, 9

*Picard v. FGLS Equity LLC*,
Adv. Proc. No. 10-05191 (BRL) (Bankr. S.D.N.Y.) ........................................................................ 4

*Picard v. Katz (In re Bernard L. Madoff Inv. Sec. LLC)*,
   2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) .................................................................... passim

*Picard v. Mendelow, et al.*,
Adv. Proc. No. 10-04283 (BRL) (Bankr. S.D.N.Y.) ........................................................................ 3

*Samson v. Blixseth (In re Blixseth)*,
  2011 WL 3274042 (D. Mont. Aug. 1, 2011) ............................................................... 5

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  454 B.R. 307 (S.D.N.Y. 2011) ......................................................................... 6, 7, 9

*Shugrue v. Airline Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*,
  922 F.2d 984 (2d Cir. 1990) ................................................................................... 6

*Stern v. Marshall*,
  131 S. Ct. 2594 (2011) ................................................................................... passim

*Wedtech Corp v. Banco Popular de Puerto Rico (In re Wedtech Corp.)*,
  94 B.R. 293 (S.D.N.Y. 1988) ................................................................................ 10


**Statutes**
11 U.S.C. § 546(e) ........................................................................................... passim
28 U.S.C. § 1292(b) .................................................................................................. 2
28 U.S.C. § 157(d) ........................................................................................... passim
28 U.S.C. § 157(e) .................................................................................................. 11
U.S. Const. amend. VII .......................................................................................... 12

Defendants Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela Christian, C&P Associates, Ltd. and C&P Associates Inc. (collectively, "defendants") respectfully submit this memorandum of law in support of their motion for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference of this action to the bankruptcy court. As set forth below, the bankruptcy court does not have the constitutional authority to adjudicate the instant adversary proceeding and this proceeding meets the requirements for both mandatory and permissive withdrawal of the reference of all claims in the above-captioned adversary proceeding (the "Complaint" or "Compl.") filed by Irving Picard ("the Trustee"), the trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Madoff"). Accordingly, this adversary proceeding should be adjudicated by the district court.

## PRELIMINARY STATEMENT

Two decisions have been rendered in the last three months that dramatically affect the course of the nearly 1000 adversary proceedings that have been commenced by the Trustee in connection with the bankruptcy filing of BLMIS on December 11, 2008, including the adversary proceeding commenced against defendants.

In July of this year, the Supreme Court decided *Stern v. Marshall*, which, among other things, held that Article I (bankruptcy) judges do not have the authority to adjudicate claims where that are independent of the claims allowance process. 131 S. Ct. 2594 (2011).

In September of this year, in *Picard v. Katz (In re Bernard L. Madoff Inv. Sec. LLC)*, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) ("*Katz*"), the Honorable Jed S. Rakoff dismissed nine of eleven counts in the Amended Complaint filed by the Trustee against the owners of the New York Mets baseball franchise for claims related to transfers from BLMIS. In *Katz*, the Trustee sought "to recover over a billion dollars from the defendants on theories of actual fraud,

constructive fraud, preferential transfer, and the like, in violation of various provisions of federal bankruptcy law and New York State debtor and creditor law." *Katz*, 2011 WL 4448638 at *1. Judge Rakoff's dismissal is based on the safe harbor exception of § 546(e) of the Bankruptcy Code (the "Code"), which bars (i) preference or constructive fraud claims under the Code, (ii) actual and constructive fraud claims under the New York Debtor and Creditor Law (the "NYDCL"), and (iii) the recovery of subsequent transfers under § 550 of the Code. *See id.* at *2-3.

There is and can be no doubt about the precedential impact of both decisions. With respect to *Stern*, all Madoff-related adversary proceedings sounding in fraudulent conveyance in which no proofs of claim have been filed can no longer be heard in the bankruptcy court because only Article III judges are constitutionally empowered to adjudicate such proceedings. With respect to the *Katz* decision, thousands of counts based on constructive fraud under the Code and the NYDCL would have to be dismissed in the nearly 1000 adversary proceedings filed to date.

The Trustee clearly recognizes the impact of the *Katz* decision as evidenced by his recent filing in that case, a Memorandum of Law in Support of Motion to Direct Entry of Final Judgment Under Federal Rule of Civil Procedure 54(b) and for Certification Under 28 U.S.C. § 1292(b) (hereinafter, the "Certification Motion"). *See Picard v. Katz*, 11 CIV. 3605 (JSR) (S.D.N.Y. 2011) (Dkt. No. 47). In that Certification Motion, the Trustee unequivocally states that "[m]any if not all of the 900-plus [related] cases will be impacted" by the *Katz* ruling. Trustee's Certification Motion at 21.

Nevertheless, and of immediate concern to defendants here, the Trustee has informed counsel for defendants of the Trustee's intent to vigorously litigate the instant adversary proceeding against defendants, the vast majority of which is no longer legally viable under *Katz*.

2

Counsel for the Trustee has stated that their "marching orders" are to litigate all of the nearly 1000 adversary proceedings filed to date – including this one – irrespective of the substantially altered legal landscape.

Defendants bring this motion under *Stern* and pursuant to 28 U.S.C. § 157(d), which mandates withdrawal of the reference when the bankruptcy court is called upon to decide significant issues of non-bankruptcy law and, further, permits the withdrawal of a reference if the district court finds that such withdrawal will aid in the equitable administration of bankruptcy law or will conserve the assets of the debtor estate. Here, because defendants have not filed proofs of claim in the underlying BLMIS bankruptcy proceeding, the bankruptcy court does not have the constitutional authority to adjudicate the fraudulent conveyance and other claims brought against defendants by the Trustee. Additionally, as was made clear in *Katz*, the withdrawal of the reference is mandated because the adjudication and resolution of the instant adversary proceeding would require the bankruptcy court to consider, interpret and apply non-bankruptcy law. The withdrawal of the reference also should be permitted because fulfillment of the Trustee's "marching orders" unquestionably will squander the assets of the bankruptcy estate and defendants will not consent to a jury trial in the bankruptcy court.

## BACKGROUND OF THIS ADVERSARY PROCEEDING

On December 11, 2008, a SIPA liquidation was commenced against BLMIS, Irving Picard was appointed Trustee, and the case was transferred to the bankruptcy court. *SEC v. Madoff*, Case No. 08-10791 (S.D.N.Y. Dec. 15, 2008).

On November 23, 2010, a ten-count complaint against defendants was filed. It is predicated on allegations of actual and constructive fraud, and derives its authority from the Code, the Securities Investor Protection Act ("SIPA"), related sections of the NYDCL and the

New York Civil Practice Law and Rules. *See generally Picard v. Mendelow et al.*, Adv. Proc. No 10-04283 (BRL) (Bankr. S.D.N.Y. 2010) (Dkt. No. 1) ("Complaint" or "Compl.").

More precisely, the Complaint against defendants seeks a total of $11,435,809 in fictitious profits and $8,814,911 in the return of principal invested, which the Trustee contends are avoidable as a matter of law. Compl. ¶ 106. In seeking these amounts, the Trustee does not limit himself to the alleged fraudulent transfers that were made in the two and six year periods prior to the BLMIS bankruptcy filing. Rather, he contends that *any* transfers made from BLMIS to defendants prior to the filing date of the BLMIS bankruptcy are subject to avoidance. Compl. ¶¶ 105, 107-09. The Trustee also asserts a preference claim against defendants in the amount of $2,350,000 for transfers by BLMIS to an entity that is not a defendant in this proceeding in the 90-day period prior to the BLMIS bankruptcy filing.[1] Compl. ¶ 112.

Defendants have not yet answered, moved or otherwise responded to the Complaint because of various stipulations entered into by the parties.

Following the *Katz* decision, communications took place between counsel for defendants and counsel for the Trustee regarding a stay of this case pending final resolution of the issues raised in *Katz*. As set forth in the accompanying Affidavit of Stanley S. Arkin, dated October 26, 2011 ("Arkin Aff."), the Trustee's lawyers were asked whether or not they would agree to stay this adversary proceeding until the issues raised by *Katz* are decided by the Second Circuit and, if not, whether they would be amending the Complaint to reflect the guidance of *Katz*. *See* Arkin Aff. at ¶ 2. The Trustee's counsel declined to stay this proceeding or amend the complaint to remove the nine of the ten counts that do not allege actual fraud under § 548(a)(1)(A).

---

[1] Significantly, the Trustee has separately sued this entity to recover these same alleged preferential transfers. *See Picard v. FGLS Equity LLC*, Adv. Proc. No. 10-05191 (BRL) (Bankr. S.D.N.Y.) (Dkt. No. 1, Complaint Against FGLS Equity LLC).

4

Counsel for the Trustee stressed that the Trustee's "marching orders" are to litigate *all* claims – even those that have been nullified by the *Katz* ruling. *See* Arkin Aff. at ¶ 3.

The parties thereafter entered into a stipulation extending defendants' time to answer, move or otherwise respond to the Complaint until January 23, 2012. *Id.* at ¶ 5.

## ARGUMENT

## THE REFERENCE OF THIS CASE TO THE BANKRUPTCY COURT SHOULD BE WITHDRAWN

A. <u>The Bankruptcy Court is Constitutionally Prohibited from Adjudicating this Case</u>

The Supreme Court recently held in *Stern v. Marshall* that, although Congress may have granted statutory authority to bankruptcy courts to issue final judgments on "traditional actions at common law tried by the courts at Westminster in 1789," bankruptcy courts are not *constitutionally* authorized to do so. 131 S. Ct. at 2609 (citation omitted). A bankruptcy court only has jurisdiction over a debtor's claim where the debtor is asserting a right of recovery created by federal bankruptcy law or if the matter is so factually intertwined with a creditor's proof of claim that the claims allowance process mandates its resolution. *See id.* at 2614-20.

The fraudulent conveyance and preference claims brought by the Trustee in this and other Madoff-related adversary proceedings are exactly the type of suits that *Stern* prohibits bankruptcy judges from hearing because they are "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989). More plainly stated, fraudulent conveyance actions that are independent of the claims allowance process have been held to be traditional actions at common law which bankruptcy judges may not hear. *See Samson v. Blixseth (In re Blixseth)*, 2011 WL 3274042, at *11 (D. Mont. Aug. 1, 2011) (holding

that a non-Article III court is not allowed to adjudicate a fraudulent conveyance claim when such claim is not tied to the claims allowance process, and only seeks to augment the estate, regardless of the nature of the action as being "core"); *Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, 2011 WL 3610050, at *14-15 (W.D. Mich. Aug. 17, 2011) (holding that an action to recover a fraudulent transfer from a subsequent transferee cannot be adjudicated by a bankruptcy judge).

Defendants have not filed a proof of claim in the BLMIS liquidation proceeding. Arkin Aff. ¶ 6. Thus, the Trustee's fraudulent conveyance and preference claims against defendants cannot be considered to be intertwined with the claims allowance process, and, after *Stern*, can no longer be adjudicated by a bankruptcy judge. For this reason alone, the reference of this action to the bankruptcy court should be withdrawn.

B.  Withdrawal of the Reference is Mandated Because Resolution of the Proceeding Requires the Consideration of Non-Bankruptcy Law

Mandatory withdrawal of the reference is governed by 28 U.S.C. § 157(d), which provides:

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The decision whether to withdraw a reference to the bankruptcy court rests squarely with the district court. *Messinger v. Chubb Group of Ins. Cos.*, 2007 WL 1466835, at *1 (N.D. Ohio May 16, 2007). "Section 157(d) has been construed 'narrowly' to apply only in cases 'where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding.'" *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307, 312 (S.D.N.Y. 2011) (quoting *Shugrue v. Airline Pilots Ass'n. Int'l. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990)). "Consideration is 'substantial

and material' when the case requires the bankruptcy judge to make a 'significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'" *Id.* (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)).

Withdrawal of the reference is mandated here because the Complaint raises issues requiring significant and novel interpretation of SIPA and other non-bankruptcy statutes. As this Court already has held in other Madoff-related cases, if a proceeding presents a potential conflict between the bankruptcy laws and SIPA, withdrawal is mandatory:

> [W]hile it is certainly true that SIPA liquidation proceedings may be brought in the bankruptcy court and that SIPA incorporates provisions of title 11 to the extent that they are consistent with SIPA, SIPA expressly provides that it shall be considered an amendment to, and section of, the Securities Exchange Act of 1934, and for this reason is codified in Title 15 (where securities laws are placed), rather than in Title 11 (where bankruptcy laws are placed). . . . The reason for this language and placement is that SIPA is, first and foremost, concerned with the protection of securities investors (as its very title states), whether in or outside the bankruptcy context. A substantial issue under SIPA is therefore, almost by definition, an issue "the resolution of [which] requires consideration of both title 11 and other laws of the United States."

*Picard v. HSBC Bank PLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 450 B.R. 406, 410 (S.D.N.Y. 2011) (quoting 28 U.S.C. § 157(d)); *see also Securities Investor Protection Corp.*, 454 B.R. at 316 (same). As Judge Rakoff strongly indicates in *Katz*, the claims and defenses likely to be advanced in this adversary proceeding implicate many federal non-bankruptcy law issues, including the interpretation of SIPA; this case "almost by definition" mandates withdrawal of the reference.

Specifically, in *Katz*, this Court recently dismissed nearly all of the Trustee's claims, holding that the "safe-harbor" exception of § 546(e) of the Code essentially bars the Trustee from bringing claims other than those alleging actual fraud. *See Katz*, 2011 WL 4448638. Finding that "Madoff Securities was a registered securities brokerage firm, a fact that directly

7

invokes certain 'safe-harbor' provisions of the Bankruptcy Code," this Court concluded that "the liabilities of customers like the defendants here are subject to the 'safe harbor' set forth in section 546(e) of the Bankruptcy Code." *Id.* at *2. According to this Court, "clearly. . . all payments made by Madoff Securities to its customers" are properly classified as settlement payments with respect to § 546(e), and "any payment by Madoff Securities to its customers that somehow does not qualify as a 'settlement payment' qualifies as a 'transfer' made 'in connection with a securities contract.'" *Id.* This Court also concluded, that, as a result of the foregoing facts, "the Bankruptcy Code precludes the Trustee from bringing *any* action to recover from *any* of Madoff's customers *any* of the monies paid by Madoff Securities to those customers except in the case of actual fraud." *Id.* (emphasis added).

Defendants intend to argue that, as this Court found in *Katz*, any payments they received from BLMIS (a registered securities broker) were in the form of settlement payments or in connection with a securities contract, and, thus, the safe harbor of § 546(e) applies. *See Id.* at *2. It is highly likely that the Trustee will oppose application of the safe harbor defense of § 546(e), as he has many times in the past. *See, e.g.* Trustee's Certification Motion at 11, 15 (arguing that "the Court's rulings on the application of the concepts of 'settlement payment' and 'securities contracts' as defined within § 546(e) are at odds with numerous authorities within the Second Circuit and beyond" and "[a]pplying § 546(e) to shield from recovery fraudulent transfers made in furtherance of Madoff's Ponzi scheme" would yield an "absurd" result.). Indeed, if the Trustee had a different intention, his lawyers would have readily agreed to amend the Complaint against defendants to reflect the rulings in *Katz* regarding the application of § 546(e). *See* Arkin Aff. ¶ 3. It is virtually certain, therefore, that the resolution of this adversary proceeding will require consideration, interpretation and application of non-bankruptcy law, mandating the

8

withdrawal of the reference. *See, e.g., In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 2011 WL 2536101 at *5 (2d Cir. June 28, 2011) (Section 546(e) "stands at the intersection of two important national legislative policies on a collision course – the policies of bankruptcy and securities law") (citation and quotation omitted).

Defendants may assert additional defenses that similarly and substantially implicate non-bankruptcy law. For example, defendants may argue that their BLMIS account statements are enforceable under the federal securities laws, even when the broker does not purchase the securities set forth thereon, and thus payments to defendants constituted payments of antecedent debts and not fraudulent conveyances. Another defense that might be put forth by defendants is that the correct methodology for determining the value of those transfers is one of "constant dollars."[2] Although this is in no way meant to be an exhaustive list of all possible defenses that defendants may raise, and defendants reserve all defenses available to them, such possible defenses each require "consideration of both title 11 and other laws of the United States" mandating the withdrawal of the reference. *HSBC*, 450 B.R. at 410.

C.  The Reference Should be Withdrawn to Protect the Assets of the BLMIS Estate

Under 28 U.S.C. § 157(d), a "district court may withdraw . . . any case or proceeding referred [to the bankruptcy court] on its own motion or on a timely motion of any party, for cause shown." Although the word "cause" is not defined in the statute, district courts in this circuit have considered a number of factors in evaluating cause, including economical use of

---

[2] *See* Memorandum of Law of the Securities and Exchange Commission Supporting Trustee's Determination that Net Equity Should Not be Based on Securities Positions Listed on Last Statements, and Supporting in Part Trustee's Determination that Net Equity Should be Based Upon Amounts Deposited Less Amounts Withdrawn, *In re Bernard L. Madoff Inv. Secs. LLC*, No. 08-1789 (Bankr. S.D.N.Y. filed Dec. 11, 2009) (Dkt. No. 1052) (The SEC argues that the Trustee should be using a "constant dollar" approach, whereby the "net investment" method is modified to apply an interest factor to older transactions so that customer deposits made years ago are valued consistently with more recent withdrawals). Such a defense would be an issue of first impression, and "[w]here [as here] matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met." *Securities Investor. Protection Corp.*, 454 B.R. at 312.

debtors' and creditors' resources, uniformity in the administration of bankruptcy law, and the right to a jury trial. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993).[3]

Two major factors militating in favor of granting defendants' motion to withdraw the reference are the Trustee's obligations to economically deploy the debtors' and creditors' resources and to uniformly administer the bankruptcy proceedings. *Orion Pictures*, 4 F.3d at 1101; *In re Kenai*, 136 B.R. at 61. The Trustee apparently agrees. In his Certification Motion, he states that "[t]he institutional efficiency of the federal court system is a chief concern" as it relates to the BLMIS proceedings, and that "protracted and expensive litigation" should be avoided. Certification Motion at 20. In that same motion, the Trustee further admits that "clarif[ication of] the state of the law prior to commencement of hundreds of trials on claims that mirror those asserted against [the *Katz* defendants]" because "[m]any if not all of the 900-plus [related] cases will be impacted" by the *Katz* ruling. *Id.* at 3, 21.

The Trustee's current course of action is manifestly at odds with these recent pronouncements. Assuming the Trustee proceeds with his "marching orders" to fully litigate *all* claims prior to a resolution of the issues presented in *Katz*, there simply is no question that the Trustee will waste significant BLMIS estate resources. In this action alone, the Trustee's refusal

---

[3] Citing *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai)*, 136 B.R. 59, 61 (S.D.N.Y.1992) (factors include whether action is core or non-core and issues of "(1) judicial economy, (2) uniform bankruptcy administration, (3) reduction of forum shopping, (4) economical use of debtors' and creditors['] resources, (5) expediting the bankruptcy process, and (6) the presence of a jury demand"); *Caplan v. Liberty Mut. Ins. Co. (In re Century Brass Prods., Inc.)*, 1992 WL 22191 at *3, (D. Conn. Jan. 7, 1992) (promotion of uniformity in bankruptcy administration, judicial economy, and the bankruptcy court's knowledge of the facts warranted denying motion to withdraw reference); *Holland Indus. Inc. v. Western Entertainment, Inc. (In re Mountain View Coach Line, Inc.)*, 1989 WL 129479 at *1 (S.D.N.Y. Oct. 24, 1989) (court should consider whether matter is core or non-core and issues of judicial economy); *Wedtech Corp v. Banco Popular de Puerto Rico (In re Wedtech Corp.)*, 94 B.R. 293, 296 (S.D.N.Y.1988) (uniformity, forum shopping, efficiency, and jury trial considerations all are relevant); *Holland America Ins. Co. v. Roy*, 777 F.2d 992, 999 (5th Cir. 1985) ("The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process."); 1 *Collier on Bankruptcy* ¶ 3.01[2][e], at 3-64.

to amend the Complaint will compel defendants to file a motion to dismiss, which will require full briefing and a ruling – all of which will dissipate the BLMIS estate and unduly tax judicial resources. The scale of such waste increases dramatically when multiplied across all BLMIS-related proceedings (since, as the Trustee admits, *Katz* impacts all 900-plus related proceedings). Moreover, there is a potentiality that there will be inconsistent rulings in those adversary proceedings. Despite the fact that Judge Rakoff has found that the only relevant facts regarding the application of the safe harbor in § 546(e) should be the same across every BLMIS adversary proceeding, the bankruptcy court to date has not so found. Indeed, and as noted by the Trustee in his Certification Motion, the bankruptcy court strongly disagrees with Judge Rakoff about the application of the safe harbor in these proceedings. *See* Certification Motion at 12-13. If this (and other) adversary proceedings are not adjudicated by the district court, the best possible result is that there will be a motion and a ruling in each adversary proceeding presently before the bankruptcy court that the safe harbor provision of § 546(e) mandates dismissal of all claims other than those alleging actual fraud. It is also possible, however, that the bankruptcy court will continue to disagree with this Court about the application of the safe harbor and, in that event, inconsistent rulings will occur, requiring further appeals to this Court. By refusing to amend the Complaint in the instant adversary proceeding to reflect this Court's rulings in *Katz*, the Trustee appears to be hoping for and encouraging the latter.

D. The Reference Should be Withdrawn Because Defendants Do Not Consent to a Jury Trial in the Bankruptcy Court

Another factor to be examined when deciding a motion to withdraw the reference is whether or not the right to a jury trial exists. If a party has a right to a jury trial on any claim, the bankruptcy court may only conduct such a jury trial "with the express consent of all the parties." 28 U.S.C. § 157 (e). *Orion Pictures*, 4 F.3d at 1101. Defendants are entitled to a jury trial under

11

the Seventh Amendment, which provides: "[i]n [s]uits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . " U.S. Const. amend. VII. The Supreme Court defined the phrase "[s]uits at common law" to mean "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera*, 492 U.S. at 41 (emphasis in original) (internal quotation and citation omitted). Thus, whether a litigant is entitled to a jury trial depends on the nature of the dispute, i.e., whether the claims asserted are legal or equitable. *Granfinanciera* further ruled that actions for fraudulent conveyance are legal and, thus, defendants were entitled to a jury trial notwithstanding that Congress designated such actions as core. 492 U.S. at 64. In the instant adversary proceeding, monetary damages are sought for fraudulent conveyance, and applied here, *Granfinanciera* compels a jury trial in the district court. *See* Compl. "WHEREFORE" Clause *i-xiv*.

Further, and noted above, no defendant in this adversary proceeding has filed a proof of claim in the BLMIS bankruptcy proceeding. It is well settled law that a party that has not submitted a proof of claim has a right to a jury trial in actions to recover alleged preferences and fraudulent transfers. *See Granfinanciera*, 492 U.S. at 36 ("[s]eventh [a]mendment entitles a person who has not submitted a claim against a bankrupt estate to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent money transfer"). As they do not consent to a jury trial in the bankruptcy court, defendants are thus entitled to a jury trial in the district court. This right alone provides cause for withdrawal of the reference.

12

## CONCLUSION

For the reasons discussed herein, defendants' motion to withdraw the reference from the bankruptcy court should be granted. The bankruptcy court does not have the authority to adjudicate the claims against defendants and the adversary proceeding meets the requirements for both mandatory and permissive withdrawal of the reference.

Dated: New York, NY
      October 27, 2011

ARKIN KAPLAN RICE LLP

By: /s/ Stanley S. Arkin
    Stanley S. Arkin (SA-1373)
    Michelle A. Rice (MR-4254)
    590 Madison Avenue
    New York, NY 10022
    (212) 333-0226 Telephone

*Attorneys for Defendants Steven B. Mendelow, Nancy Mendelow, Cara Mendelow, Pamela Christian, C&P Associates, Ltd. and C&P Associates Inc.*